UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Mark Picozzi,<br><br>            Plaintiff,<br><br>    v.<br><br>State of Nevada et. al,<br><br>            Defendants. | Case No. 2:20-cv-00518-RFB-MDC<br><br>**ORDER** |

Before the Court is Plaintiff's Priority Review Motion for Ashes on Ash Wednesday. ECF No. 197. Although Plaintiff does not explicitly use these words in his motion, the Court construes Plaintiff's motion as a Motion for Temporary Restraining Order and Motion for a Preliminary Injunction. United States v. Seesing, 234 F.3d 456, 462 – 63 (9th Cir. 2000) (noting obligation of court to liberally construe *pro se* motions from people who are incarcerated). For the following reasons, the Court grants Plaintiff's Motion for a Temporary Restraining Order and sets the hearing on the Motion for Preliminary Injunction.

**I.    RELEVANT PROCEDURAL BACKGROUND**

On June 26, 2022, the Court issued its Screening Order, permitting Plaintiff's First Amendment free exercise and RLUIPA violations to proceed against Defendants Williams, Johnson, Nash, Kuloloia, Barrett, Silber, Calderon, Wilson, Oliver, Bean, Fowler, and Barth. ECF No. 134. On January 19, 2024, the Court held a hearing on Defendants' Motion to Dismiss the Amended Complaint. The Court granted the Motion in part and denied it in part, permitting Plaintiff's First Amendment free exercise and RLUIPA claims to proceed based only on alleged

violations that occurred in 2019 and any year thereafter. ECF No. 199. On January 29, 2024, the Plaintiff filed his motions for injunctive relief. Plaintiff requests that the Court order Defendants to provide him with ashes on Ash Wednesday. If Defendants are unable to do so, Plaintiff alternatively requests that he brought to a Catholic church located in Las Vegas on Ash Wednesday, which is February 14, 2024. The Court ordered NDOC to respond by February 7, 2024. ECF No. 200. NDOC filed their Response on February 7, 2024. This Order follows.

## II. FACTUAL ALLEGATIONS

Plaintiff is incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at High Desert State Prison ("HDSP"). In the Second Amended Complaint, Plaintiff alleges that he is and has been Catholic his entire life. ECF No. 124 at 4. For five straight years since 2017, Plaintiff has filed numerous inmate request forms to receive ashes for Ash Wednesday, a no meat diet during Lent, and to receive palms for Palm Sunday. Id. For five straight years, the chaplain has never honored this request. Id. The administrative regulations permit these requests. Id. at 5. Plaintiff's beliefs are religious and sincerely held. Id. In Plaintiff's motion for injunctive relief, he alleges that he has written to the Chaplain and to Culinary to receive a No Meat Diet during Lent and to receive ashes for Ash Wednesday but has received no response. ECF No. 197. Plaintiff attaches three Inmate Requests Forms, which he sent to Culinary on January 3, 2024, and to the Chapel on January 3 and January 8, 2024. Id. at 4-6.

## III. LEGAL STANDARD

### a. Temporary Restraining Order

The analysis for a temporary restraining order ("TRO") is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

The Prison Litigation Reform Act ("PLRA") further provides that in any civil action with respect to prison conditions, any preliminary injunctive relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626 (a)(2).

### b. First Amendment

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I. The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" Walker v. Beard, 789 F.3d 1125, 1138 (9th Cir. 2015). The Supreme Court has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).

### c. RLUIPA

Claims brought under RLUIPA are similar to free exercise claims, although RLUIPA proceeds under a slightly different framework. RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Thus, "[c]laims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations." Shilling v. Crawford, 536 F. Supp. 2d 1227, 1232 (D. Nev. 2008). A plaintiff has the initial burden of proving that the prison's actions

implicated the plaintiff's religious exercise and that the prison's actions substantially burdened the exercise of religion. Holt v. Hobbs, 574 U.S. 352, 360-61 (2015).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)). RLUIPA's substantial-burden inquiry asks whether the government substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise. Holt, 574 U.S. at 361-62. A substantial burden on religious exercise must impose a "significantly great restriction" on the exercise. San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

## IV.   DISCUSSION

In their response, NDOC argues that Plaintiff's motion is moot. In support, NDOC provides evidence that a representative from the Catholic Diocese of Las Vegas has indicated that a volunteer is due to come to HDSP on Ash Wednesday, February 14, 2024 to distribute ashes donated from local Catholic parishes. NDOC also states that all inmates (including Plaintiff) will receive a meatless diet through Lent and therefore Plaintiff will not have to make a separate request to be placed on an alternative diet during Lent. However, the supporting evidence, including the Declaration of Acting Food Service Manager, Anthony Quillman, and a memo from HDSP's food service provider, Aramark, indicates that the meatless diet option will only be available on Ash Wednesday and once every Friday through the end of Lent, March 28, 2024.

Defendants further argue that a preliminary injunction is not warranted because Plaintiff has failed to establish a likelihood of success on the merits. Defendants assert that Plaintiff has failed to exhaust his remedies with respect to his underlying claim and has not established that his religious exercise is substantially burdened. Defendants also argue that Plaintiff has failed to establish irreparable harm because he is due to receive the relief he requested. Finally, Defendants argue that the balance of equities and the public interest favor Defendants because requiring NDOC to transport Plaintiff to a church on Ash Wednesday would present a serious safety risk and divert

economic resources and staffing.

### a. Meatless Diet during Lent

#### i. Exhaustion

Defendants have raised the affirmative defense of failure to exhaust as it relates to the claims in Plaintiff's complaint. Failure to exhaust is an affirmative defense and defendants bear the burden of proving it. Jones v. Bock, 549 U.S. 199, 216 (2007). If the defendants do so, then the burden shifts to the inmate to show "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). As this Court has previously noted, "the intent of the exhaustion requirement is to place the facility on notice of issues raised by an inmate and not erect esoteric and irrelevant procedural requirements." Williams v. Allen, No. 2:17-cv-01612-RFB-DJA, 2020 U.S. Dist. LEXIS 94684, *21 (D. Nev. May 29, 2020); see also Griffin, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.").

Plaintiff filed at least one grievance related to these claims, Grievance No. 2006-30-79895, which was grieved to the first and second (but not final) stage of the grievance process. Defendants also acknowledge that Plaintiff has filed several grievances relating to his exercise of religion broadly. There are significant disputed facts as to whether Plaintiff's other numerous grievances have been received by NDOC and discovery on this very issue remains ongoing. See Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (holding dismissal for failure to exhaust is appropriate in the "rare event" that it is clear on the face of the complaint). Independently of this, the Court finds that Plaintiff has sufficiently demonstrated that the remedies available to him are futile. The allegations and record thus far indicate that Plaintiff has attempted unsuccessfully for five years to have certain religious accommodations provided to him. See Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015). Plaintiff has established a likelihood of success in defeating the exhaustion affirmative defense.

ii. <u>Likelihood of Success on the Merits</u>

The Court finds that Plaintiff has established a likelihood of success on the merits under the First Amendment and RLUIPA. Plaintiff has established that he is a devout Catholic and thus his belief is sincerely held and is rooted in religious, rather than philosophical beliefs. Since this litigation commenced in 2020, Plaintiff has continued to seek out opportunities to maintain his faith practice in prison. He also alleges that he has been denied that opportunity in various forms since 2017 and has submitted several motions for injunctive relief on these same issues. <u>See</u> ECF No. 32 (Plaintiff's January 27, 2021 Motion for Preliminary Injunction Relief on "Religion, Ashes, Palms, No Meat Diet"). Plaintiff has further shown a likelihood of success in establishing a substantial burden on his religious exercise by an ongoing denial of a meatless diet during Lent and ashes on Ash Wednesday. <u>Id</u>. (explaining that Plaintiff's family has had to cover the cost of his meals during Lent).

Although Defendants are implementing a meatless diet on Ash Wednesday and each Friday of Lent, they have not explained how the availability of a meatless diet once per week (as opposed to every day) relieves the substantial burden on Plaintiff's exercise of religion. Defendants have also not established the burden furthers a compelling government interest and does so by the least restrictive means under RLUIPA. Nor have Defendants established that their conduct is reasonably related to a legitimate penological interest as required by the First Amendment. <u>See e.g.</u>, <u>Turner v. Safley</u>, 482 U.S. 78 (1987); <u>McElyea v. Babbitt</u>, 833 F.2d 196 (9th Cir. 1987) (holding that "inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion" and mandating that reasonable alternatives must be considered by the prison); <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674 (9th Cir. 1997), *as amended* (Apr. 25, 1997) (finding prison policy of supplying Orthodox Jewish prisoner with one frozen kosher dinner supplemented with nonkosher vegetarian or nonpork meals violated prisoner's First Amendment rights, where reasonable alternatives existed). The Court finds it significant that NDOC has previously represented that they were implementing a possible reasonable alternative, a vegan diet in 2021, and Plaintiff appears to have been enrolled in that diet for a period of time. <u>See</u> ECF No. 48 (discussing vegan meal plan).

iii. Irreparable Harm

The Court further finds that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Doe v. Harris, 772 F.3d 563 (9th Cir. 2014) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Contrary to Defendants' representations, Plaintiff is not set to receive the relief he requested. As noted, HDSP intends to provide a meatless diet only once per week through the end of Lent, Plaintiff has previously asserted that he does not eat meat during the entire period of Lent, and Defendants have not explained how this accommodation will relieve the burden imposed on Plaintiff.

iv. Balance of Hardships and Public Interest

The Court finds that the remaining two factors, the balance of hardships and the public interest, both weigh in favor of granting the TRO. Plaintiff has demonstrated that his religious freedom will be burdened if he does not receive an appropriate diet during Lent. Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1059 (9th Cir. 2007) (serious First Amendment questions compels a finding that ... the balance of hardships tips sharply in [the plaintiff's] favor."). On the other hand, Defendants have not stated how an injunction related to Defendant's diet would impose any burden on prison resources or safety. Further, the Ninth Circuit "ha[s] consistently recognized the significant public interest in upholding First Amendment principles," Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014), and "it is always in the public interest to prevent the violation of a party's constitutional rights." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012).

b. **Ashes on Ash Wednesday**

Based on representations made by NDOC, as well as the Court's review of the related filings in this case, it appears that, at this juncture, the relief requested in relation to ashes on Ash Wednesday will be provided to Plaintiff. The Court therefore denies a temporary restraining order on these grounds only.

c. **Requirements of Federal Rule of Civil Procedure 65**

Because Defendants received notice and an opportunity to respond to Plaintiff's motion, Plaintiff does not need to meet the formal requirements of Fed. R. Civ. P. 65(b) for this Temporary

Restraining Order to issue. The purpose of the notice requirement is to give defendants a fair opportunity [to] prepare an opposition to the application." <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County</u>, 415 U.S. 423, 433 n.7 (1974). Defendants were served with the Second Amended Complaint on June 27, 2022. Defendants received notice of Plaintiff's motion for injunctive relief on January 29, 2024. Defendants were provided with ten days to respond and did in fact respond. Therefore, the Court does not find that this TRO is being issued *ex parte* or "without notice" to the adverse party as that term is defined in Fed. R. Civ. P. 65(b). The Court's finding of notice for the purpose of the TRO is further supported by an examination of cases where preliminary injunctions (which <u>do</u> require notice) have issued as soon as the motion became ripe for review. <u>See, e.g.</u>, <u>Pompilius v. Nevada</u>, No. 2:18-cv-01801-APG-VCF, 2021 WL 414534 (D. Nev. Feb. 5, 2021) (issuing preliminary injunction after motion was ripe but without a hearing); <u>Lewis v. Garland</u>, No. EDCV 22-296 JGB (AGRx), 2023 WL 8898601 (C.D. Cal. July 31, 2023) (same); <u>Assyrian Am. Nat'l Fed'n v. Assyrian Am. Notional Fed.</u>, No. CV F 13-0890 LJO SAB, 2013 WL 12073472 (E.D. Cal. June 27, 2013) (similar).

### V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for a Temporary Restraining Order is **GRANTED**. Defendants shall immediately make a meatless diet available to Plaintiff for all meals. The Temporary Restraining Order will remain in force for the earlier of 14 days or until the Court issues a ruling on Plaintiff's pending Motion for a Preliminary Injunction.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Motion for a Preliminary Injunction will be held on **Tuesday, February 27, 2024, at 10:45 A.M.** in Las Vegas Courtroom 7C before Judge Richard F. Boulware.

DATED: <u>February 14, 2024.</u>

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**